IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ALLIANTGROUP, L.P.,           §
                              §
     Plaintiff,               §
                              §
v.                            §        CIVIL ACTION NO. H-12-1429
                              §
JEFFREY FEINGOLD, and         §
TAX POINT ADVISORS,           §
                              §
     Defendants.              §

## MEMORANDUM AND ORDER

_____

_____Pending is Defendant's Motion to Dismiss and to Stay Motion of Plaintiff for Contempt (Document No. 13).  After carefully considering the motion, response, and applicable law, the Court concludes as follows.

## I.  Background

Plaintiff Alliantgroup, L.P. ("Plaintiff," or "Alliantgroup") seeks injunctive relief and damages against Defendants Jeffrey Feingold ("Feingold") and Tax Point Advisors ("TPA," collectively "Defendants"), alleging tortious interference and fraud, civil conspiracy, defamation, and vicarious liability.[1]  Feingold previously worked for Plaintiff.  Plaintiff alleges that Feingold

_____

[1] Document No. 1 at 8-16 (Orig. Pet.).  Plaintiff alleges that TPA is vicariously liable for Feingold's actions.  Id. at 13.

and/or TPA published defamatory statements about Plaintiff on interactive websites and in emails. Defendants argue that this Court does not have personal jurisdiction over them because they lack sufficient contacts with Texas.

## II.  Discussion

### A.  Legal Standard

A federal court may exercise personal jurisdiction over a nonresident defendant if: (1) the long-arm statute of the forum state confers personal jurisdiction over that defendant; and (2) the exercise of such jurisdiction comports with due process under the United States Constitution. *See* Electrosource, Inc. v. Horizon Battery Techs., Ltd., 176 F.3d 867, 871 (5th Cir. 1999). Because the Texas long-arm statute has been interpreted to extend as far as due process permits, the sole inquiry is whether the exercise of personal jurisdiction over a nonresident defendant comports with federal constitutional due process requirements. Id.

This due process inquiry focuses upon whether the nonresident defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 66 S. Ct. 154, 158 (1945). Two types of personal jurisdiction are recognized: (1) specific and (2) general. Specific jurisdiction exists when the cause of action relates to or arises out of the

defendant's contacts with the forum.  *See* <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 104 S. Ct. 1868, 1872 n.8 (1984).  Alternatively, general jurisdiction may be exercised over a defendant who has substantial, systematic and continuous contacts with the forum.  *See* <u>Johnston v. Multidata Systems Int'l Corp.</u>, 523 F.3d 602, 609 (5th Cir. 2008).

When an evidentiary hearing on the question of personal jurisdiction is not conducted, the party seeking to establish jurisdiction bears the burden of presenting a prima facie case of personal jurisdiction.  *See* <u>Alpine View Co. Ltd. v. Atlas Copco AB</u>, 205 F.3d 208, 215 (5th Cir. 2000); <u>Wien Air Alaska, Inc. v. Brandt</u>, 195 F.3d 208, 211 (5th Cir. 1999).  Proof by a preponderance of the evidence is not required.  <u>Kelly v. Syria Shell Petro. Dev. B.V.</u>, 213 F.3d 841, 854 (5th Cir. 2000).  A plaintiff may present a prima facie case by producing admissible evidence which, if believed, would suffice to establish the existence of personal jurisdiction.  *See* <u>WNS, Inc. v. Farrow</u>, 884 F.2d 200, 203 (5th Cir. 1989).  Uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits and other documentation must be construed in the plaintiff's favor.  *See* <u>Alpine View</u>, 205 F.3d at 215.

B.   Analysis

    1.   General Jurisdiction

    Plaintiff cites to several contacts with Texas that are unrelated to this suit and therefore only relevant to establishing general jurisdiction over Defendants.  *See* Cent. Freight Lines Inc. v. APA Transp. Corp., 322 F.3d 376, 381 (5th Cir. 2003) ("General jurisdiction may be asserted when a defendant's contacts with the forum state are substantial and 'continuous and systematic' but unrelated to the instant cause of action.") (quotation marks and citations omitted).  Plaintiff includes in its supporting evidence proof that TPA made numerous representations on websites, including its own, and in emails, listing Houston among its offices in the United States and representing that it does business in Texas.  The address of One Riverway, Houston, Texas 77056, is sometimes shown for TPA on websites.  Feingold himself, however, has now put the lie to these falsehoods that were published on his own or other websites and in his emails.  He now swears that TPA has no office in Houston or in Texas.  He attempts to explain his and TPA's false representations that TPA had actual offices in Houston or in Texas as follows: "[F]or purposes of possible future expansion, TPA has at various times, listed potential office locations and/or maildrops on its website."[2]  Feingold's affidavit further states

    ---

    [2] Document No. 13, ex. 1 at 2.

    4

that, "TPA conducts no business in Texas: we have no office, no employees, no answering service, no business in the State of Texas."[3]  The only direct contact Feingold states that he and TPA have had with Texas is that TPA used the services of a consulting company in Texas from January to June 2011, which company consisted of a single individual, who "made no sales in Texas, nor performed any analyses for any companies located in Texas."[4]  Plaintiff's evidence does not contradict any of these asserted facts, and there is no other evidence that Feingold and/or TPA had substantial, systematic, continuous contacts with this State.  Evidence that Feingold/TPA falsely published statements that TPA presently has an office in Houston, or offices in Texas, regardless of what such conduct might suggest about Feingold/TPA's lack of integrity, is not enough to establish general jurisdiction over Defendants.

 2.  Specific Jurisdiction

 In support of its assertion that this Court has specific jurisdiction over Defendants, Plaintiff points to Defendants' posting of allegedly defamatory statements on interactive websites such as TexasInsider.org and Wikipedia.  Plaintiff includes in its proof a photocopy of an article and accompanying comments on the

---

[3] Id., ex. 1 at 3.

[4] Id.

website TexasInsider.org, in which Feingold, allegedly writing
under the pseudonym of "Manny Grover," added the following:

> Alliantgroup recently lost a huge tax credit which the
> IRS rejected for alliant group's client.  I only know
> because this was then appealed by the company and
> alliantgroup lost in tax court.  Alliant group also
> appears to have sued between 100-150 clients in the past
> few years, which I also found online . . . I would be
> weary of this company.  Just do a Google search . . .[5]

In addition, Plaintiff produced a number of documents that appear
to be revisions of Alliantgroup's Wikipedia page.  In the
information provided about Alliantgroup are comments critical of
the company, which Plaintiff alleges were posted by Feingold and/or
TPA.[6]  Two basic iterations of a statement are repeated in almost
all of the comments.  One of Feingold's alleged Wikipedia postings
states:

> The prior two reports on the 'ripoff report' website
> about this company are accurate, in my experience, as the
> same thing happened to our company.  Alliantgroup
> employed aggressive sales tactics, didn't deliver on the
> work as promised, and then sued us to collect.  They have
> more staff attorneys than most law firms and they use
> them to exploit the law (and their customers).  According

---

[5] Document No. 14, ex. AB (ellipses in original).

[6] Plaintiff's claims are brought against Feingold and/or TPA.
*See, e.g.,* Document No. 1 at 12 of 40.  Defendants in their motion
represent that "Defendant TPA, as a one-man entity, is for all
intents and purposes the same as Feingold."  Document No. 13 at 11.
Therefore, by Defendants' own admission and with no evidence to the
contrary, Feingold's alleged contacts are imputed to TPA, and vice
versa, for purposes of determining whether specific jurisdiction
exists.

> to public documents available on the website for Harris
> County, TX Court, alliantgroup has sued 100-150
> companies, mostly their own customers.[7]

The other version states:  "Alliantgroup is primarily a de facto
law firm, litigating against hundreds of companies across the
country.  See public records at Harris County Courts in Harris
County, TX."[8]

Unlike general jurisdiction, "[i]t is well settled that
specific jurisdiction may arise without the nonresident defendant's
ever stepping foot upon the forum state's soil or may arise
incident to the commission of a single act directed at the forum."
Bullion v. Gillespie, 895 F.2d 213, 216 (5th Cir. 1990) (citations
omitted).  To establish minimum contacts sufficient to support
specific jurisdiction, however, "[i]t is essential that there be
some act by which the defendant purposefully avails himself of the
privilege of conducting activities with the forum state, thus
invoking the benefits and protections of its laws."  Clemens v.

---

[7] *See, e.g.*, Document No. 1 at 18 of 40.  Another posting,
allegedly written by Feingold under the pseudonym "Jimmy," was
placed by him on Ripoff Report's website, and contains similar
criticisms of Plaintiff, and written as if "Jimmy" were a
disgruntled AlliantGroup client.  In this posting, Feingold claimed
Plaintiff "took a $10,000 deposit and never delivered our report.
. . .  Beware this company they don't deliver and don't hesitate
about suing their own clients."  He then lists 103 cases allegedly
filed by AlliantGroup in either the state courts of Texas or
federal courts in Texas.  Document No. 1-2 at 37-40; Document No.
1-3 at 1-5.

[8] *See, e.g.*, Document No. 1-2 at 5 of 40.

McNamee, 615 F.3d 374, 379 (5th Cir. 2010), *cert. denied*, 131 S. Ct. 3091 (2011) (citing Hanson v. Denckla, 78 S. Ct. 1228, 1240 (1958)).

The Fifth Circuit has held, in the context of allegedly defamatory postings on an interactive website, that "the sources relied upon and activities described in an allegedly defamatory publication should in some way connect with the forum if Calder is to be invoked." Revell v. Lidov, 317 F.3d 467, 474 (5th Cir. 2002) (referring to Calder v. Jones, 104 S. Ct. 1482 (1984)); *see also* Clemens, 615 F.3d at 380 ("We read Calder as requiring the plaintiff seeking to assert specific personal jurisdiction over a defendant in a defamation case to show '(1) the subject matter of and (2) the sources relied upon for the article were in the forum state.'") (quoting Fielding v. Hubert Burda Media, Inc., 415 F.3d 419 (5th Cir. 2005)).  Moreover, the alleged defamatory material must be directed at a Texas audience as opposed to simply being made available to Texas residents in the same way as anyone else with internet access. Revell, 317 F.3d at 474-75.

In this case, it is undisputed that Feingold, a former employee of Alliantgroup, is aware that Alliantgroup is based in Texas.  Plaintiff pleads that Feingold published allegedly defamatory comments on TexasInsider.org, a news source which, as its

8

website declares, specifically targets Texas residents.[9]  Feingold also made allegedly defamatory statements on Wikipedia, a website not specifically targeted to Texas residents, but in which he explicitly focused on Harris County, Texas public records as a source for his statements.  These facts are quite different from Revell, where the author of the allegedly defamatory article did not know that Revell was a Texas resident and that the harm would be felt there when he posted an article on a website not targeted to a Texas audience, not citing Texas sources, and not mentioning Texas.  317 F.3d at 475.  Likewise, these facts are distinguished from Clemons, where the defamatory statements were made to a Major League Baseball commission and published on a national website that was not directed at Texas residents, did not rely on Texas sources, and did not focus on events in Texas.  615 F.3d at 380.  In contrast, Feingold is alleged to have used the internet to direct his defamatory statements specifically to a Texas audience targeted by TexasInsider.org, to have published statements focused on events arising in Texas, to have allegedly documented his statements by Texas sources, and to have intended his defamations to injure a Texas business, which was his former employer.  Feingold's contacts pertaining to the subject matter of this case fully support a finding of specific jurisdiction over Feingold and TPA.  *See* State

---

[9]  Document No. 14, ex. AB.  The website's banner states "YOU'RE EITHER AN INSIDER, OR YOU'RE NOT . . . OVER 130,000 TEXANS ARE, ARE YOU?"  Id.

<u>Farm Fire & Cas. Co. v. Miraglia</u>, No. 4:07-CV-013-A, 2007 WL 2963505, at *4 (N.D. Tex. Oct. 11, 2007) (finding personal jurisdiction over individual who posted on interactive website referring specifically to the Texas locations of a business, directing postings at shareholders of the business with the knowledge that the business had its principal place of business in Texas, and specifically naming officers and directors whom he knew were Texas residents).

Moreover, to require the Defendants to litigate this case in Texas does not offend traditional notions of fair play and substantial justice.  "Once a plaintiff has established minimum contacts, the burden shifts to the defendant to show the assertion of jurisdiction would be unfair." <u>Wien Air</u>, 195 F.3d at 215.  In considering the fairness issue, the Court examines: "(1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies." <u>Guidry v. U.S. Tobacco Co., Inc.</u>, 188 F.3d 619, 630 (5th Cir. 1999) (citations omitted).  "To show that an exercise of jurisdiction is unreasonable once minimum contacts are established, the defendant must make a 'compelling case' against it." <u>Wien Air</u>, 195 F.3d at

215 (quoting <u>Burger King v. Rudzewicz</u>, 105 S. Ct. 2174, 2185 (1985)).

Defendants argue that Texas has no interest in this dispute and haling Feingold into court in Texas is unfair because of the financial burden of traveling to this State compared to the relative ease for Plaintiff to litigate in Massachusetts.[10]  This is not a compelling reason to conclude that litigating this dispute in Texas will contravene constitutional notions of fairness.  Texas does have an interest in protecting its citizens from defamation, and in protecting its citizens from being targeted as the audience for defamatory statements about Texas-based businesses.  The fact that Feingold published his allegedly defamatory statements by using a computer in Massachusetts does not diminish that interest.[11]  Moreover, although Feingold makes a self-serving statement that "[r]epeated trips and perhaps lengthy stays in Texas for litigation purposes would constitute a prohibitive obstacle financially,"[12] Defendants have not shown that litigating this dispute in Texas would be materially more burdensome on Feingold than would be the countervailing burden on Plaintiff and its principals if required to make "repeated trips and perhaps lengthy stays" in Massachusetts.  Moreover, while Defendants argue that Plaintiff has

---

[10] Document No. 13 at 12.

[11] <u>Id.</u>

[12] Document No. 13, ex. 1 at 3.

11

a sales office in Massachusetts, there is no suggestion, much less evidence, that a suit of this corporate importance to Plaintiff could be directed in a distant sales office rather than by Plaintiff's executive leadership located at its principal place of business in Houston.  In sum, Defendants have not made a compelling case that this Court's exercise of jurisdiction over them in any manner raises fairness concerns of Constitutional proportions.

### III.  Order

For the foregoing reasons, it is hereby

ORDERED that Defendant's Motion to Dismiss and to Stay Motion of Plaintiff for Contempt (Document No. 13) is DENIED.  The Court will separately set the hearing on Plaintiff's Motion for Contempt.

The Clerk will enter this Order and provide a correct copy to all parties.

SIGNED at Houston, Texas, on this 26th day of September, 2012.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE